SALTER, J.
Alejandro Ornes, holding various positions and minority ownership interests in eight entities associated with the “Ultra Music Festival” and its precursors, appeals a final judgment denying him further access and documents relating to the fi *634 nances of the entities. Finding no error in the trial court’s determinations that the appellees complied with the pertinent statutory obligations, we affirm.

The Complaint and Proceedings Below

Omes filed a two-count complaint claiming unlawful denial of access to corporate books and records under section 607.1602, Florida Statutes (2011), and unlawful denial of access to limited liability company (LLC) records under section 608.4101, Florida Statutes (2011). He initially sued five Florida corporations and three Florida LLCs, but this appeal involves only four of those defendants: Ultra Enterprises, Inc., a for-profit corporation; Ultra for Life, Inc., a corporation not for profit;[1] Festival Productions MXT, LLC; and Ticket Junkie, LLC. The complaint included a demand for attorney’s fees and costs incurred in enforcing the statutory rights of access and inspection, but did not include derivative or direct claims against the defendants for misapplication of funds or other alleged wrongdoing.
By agreement between the parties, the trial court granted a motion by Omes for the appointment of a comptroller, an independent certified public accountant, to manage the production and copying of records provided by the Ultra defendants. The order and the requested documents were to remain confidential to protect proprietary and trade secret information of the entities. The court-appointed comptroller requested various records from the Ultra entities, and when certain documents were not produced, the trial court directed that they be produced.
Thereafter, the trial court conducted hearings to assess the Ultra entities’ compliance with the corporate and LLC records statutes. The court determined that no further records were required to be produced to Omes and entered a final judgment to that effect, and this appeal followed.

Analysis

The legal issue for decision below and here[2] is whether a corporation or LLC that fails to maintain an accounting record specified to be accessible to shareholders (principally, in this case, a statement of annual cash flows)[3] can be ordered to either (a) prepare and provide such a record, or (b) produce those “source” or original accounting records that would be necessary to produce the statement.[4] As support for this argument, Omes relies upon Nu Med Home Health Care, Inc. v. Hospital Staffing Services, Inc., 664 So.2d 353 (Fla. 4th DCA 1995). In that case, a corporation maintained a shareholder list that included so-called “street name” information rather than “beneficial owner” information. The appellants in the case, dissident shareholders planning a written solicitation to all shareholders, argued that the corporation was obligated to provide the requesting shareholders with the more direct beneficial owner contact list. *635 The Corporation itself maintained that the “street name” list was sufficient, and that the nominees holding record ownership would, in turn, send solicitations to the beneficial owners. The court held that the corporation was not required to obtain and produce a beneficial owner list if it did not already have such a list.
Nu Med actually supports the Ultra entities’ position here. The case holds, and we agree, that the corporation is not obligated to produce a corporate record that it does not have at the time the request is made, and that it is not required to prepare the requested record from documents that it might obtain from others. Ornes argues, however, that the analysis is different here because of the requirement in section 607.1620(1) that the corporate entities include a “statement of cash flows for that year” in the annual financial statements to be provided to shareholders. In such a case, we agree that the corporation must provide access to its existing records that would be used to prepare the statement of cash flows. The trial court found, and we agree, that the Ultra entities provided such access.
A more pertinent case, cited by neither side in their briefs, is Computer Solutions, Inc. v. Gnaizda, 633 So.2d 1100 (Fla. 3d DCA 1994). In that case, a Florida corporation responded to a shareholder request for financial statements by providing unaudited statements.
On the advice of his accountant [the shareholder] made a request for additional corporate documents relating to the company’s financial position and the unaudited financial statements. The demand for inspection included a request for supporting documentation from various accounting records and additional documentation reflecting [the corporation’s] intangible assets and contingent liabilities. [The corporation] did not produce these documents.
[The shareholder] filed a motion supported by the affidavit of his accountant seeking enforcement of his rights to inspect [the corporation’s] books. See § 607.1602, Fla. Stat. (1991). The affidavit of [the shareholder’s] accountant set forth with particularity the documents requested and the reason for the request. The trial court granted the motion for expedited inspection of the corporate records for most of the categories requested by [the shareholder]. The court denied a general request for the inspection of all other corporate records.
Id. at 1101 (footnote omitted).
In Computer Solutions, the corporation sought certiorari[5] because it claimed the additional records sought by its shareholder and his accountant were beyond the scope of section 607.1602. We denied the petition for certiorari, concluding that the trial court had examined the requests, granted some, and denied others as over-broad. And that is essentially what happened in the case at hand. The comptroller (an independent CPA) and the trial court considered the sufficiency of the records produced by the Ultra entities in lieu of a cash flow statement. The trial court ultimately concluded that the entities had complied with the applicable statutes. On this record, substantial competent evidence supported the trial court’s final judgment.

Conclusion

The statutory inspection rights of shareholders are not tantamount to a free-rang *636 ing bill of discovery for corporate financial records, nor do they obligate a corporation to prepare a record that does not exist. The procedure utilized in the circuit court afforded Omes ample access to records for the purposes of valuation expressed in his requests for corporate information. Tellingly, the exhibits attached to the Complaint disclose that Omes’ sweeping allegations against new management and the Ultra entities’ operations involve much more than a simple request for corporate financial statements. Pre-filing discovery (to attempt to find or substantiate shareholder claims for a later lawsuit) is not part of the letter or spirit of the records inspection statutes.
Affirmed.

. Access to the records of a corporation not for profit, though similar to that afforded regarding a corporation, is governed by section 617.1602, Florida Statutes (2011), rather than section 607.1602.

. We have also considered other issues — the Ultra entities' argument that we lack jurisdiction, and Omes’s arguments that documents produced by the Ultra Entities, such as tax returns, were insufficient — but have found each such argument unpersuasive.

. § 607.1620(1), Fla. Stat. (2011).

. In the case of a corporate cash flow statement, such original records would include records of income and disbursements, primarily cash transactions, financial institution ledgers and statements, and credit card payments. Omes has referred to those records as “underlying raw financial data.”

. The shareholder’s lawsuit in Computer Solutions included substantive claims against the corporation in addition to the enforcement of statutory rights to inspect and copy financial records, so the order granting access to certain additional records (and denying access to others) was interlocutory rather than final.